United States District Court
District of Massachusetts

| | |
|---|---|
| Susan W. Patoski, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. |
| | ) 17-10799-NMG |
| Nancy A. Berryhill, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM & ORDER**

GORTON, J.

Plaintiff Susan W. Patoski ("Patoski" or "plaintiff") seeks judicial review of the denial of her application for disability insurance benefits by defendant, Nancy A. Berryhill ("the Commissioner" or "defendant"), in her official capacity as Commissioner of the Social Security Administration ("SSA"). Pending before the Court are plaintiff's motion to reverse or remand the Commissioner's decision and defendant's motion to affirm the same. For the reasons that follow, plaintiff's motion will be denied and the Commissioner's motion will be allowed.

I. Background

A. Employment History and Alleged Disability

Patoski was born in 1950. She resides in Marblehead, Massachusetts, is married and has one child. She finished

-1-

college and graduate school and worked as a financial services analyst from 1985 to 1997.  From the beginning of her employment, Patoski had accommodations to account for her psychiatric and physical disorders.  Beginning in 1985, Patoski's health declined and, by 1997, she was unable to work as a financial analyst.  Patoski tried unsuccessfully to go back to school in 2000 and has not maintained full time employment since 1997.  She filed an application for social security disability ("SSD") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 216(i) and 223(d), in November, 2013.  For purposes of her application for disability insurance benefits, her alleged onset date ("AOD") is May 1, 2001, the date on which she started her treatment for breast cancer.

### B. Procedural Background

Patoski's initial application for disability benefits was filed on November 8, 2013.  Her disability claim was predicated on her obsessive compulsive disorder ("OCD"), depression, cervical disc damage, headaches, breast cancer and severe anxiety stemming from those conditions.  Her application was denied in October, 2014, and, upon reconsideration, further denied in June, 2015.  She filed a request for a hearing and review of the SSA's decision.  That hearing was held on August 16, 2016, before Administrative Law Judge Sujata Rodgers ("the ALJ").  In September, 2016, the ALJ issued a partially favorable

decision finding that Patoski was disabled from May 1, 2001, through May 1, 2002. The ALJ also found, however, that Patoski's symptoms after May 2, 2002, were not disabling. Patoski appealed the ALJ's decision to the Social Security Administration Appeals Council ("the Appeals Council"). In March, 2017, the Appeals Council issued a ruling adopting the ALJ's decision and clarifying that Patoski is not entitled to any disability benefits.

**C.   The ALJ's Decision**

The ALJ found that Patoski was disabled while undergoing treatment for breast cancer from May 1, 2001, through May 1, 2002 ("the treatment period"). Having so found, the ALJ applied an eight-step analysis to determine whether Patoski's disability continued through December 31, 2002, which is her date last insured ("DLI"). The ALJ then found that Patoski was not disabled beginning on May 2, 2002, through December 31, 2002 ("the post-treatment period"), and continuing through the date of the decision. The ALJ relied upon testimony presented at the disability hearing as well as medical reports from doctors and health professionals.

At step one of the analysis, the ALJ determined that Patoski was not engaged in substantial gainful activity. At step two, the ALJ determined that Patoski did not have an impairment or combination of impairments that met or medically

equaled the severity of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526.  At step three, the ALJ concluded that medical improvement had occurred as of May 2, 2002.  At step four, the ALJ found that this medical improvement was related to Patoski's ability to work and that Patoski's functional capacity for basic work activities increased after her breast cancer treatment concluded on May 1, 2002.  Because step five applies only if medical improvement is not related to the ability to work, the ALJ declined to make a step-five finding.  At step six, the ALJ determined that Patoski had the following severe impairments: cervical radiculopathy, breast cancer, OCD, anxiety and depression.

Before reaching step seven, the ALJ found that, after the treatment period, Patoski was no longer permitted to be absent from work at least two days per month for treatment of her medical impairments.  Patoski's residual functional capacity ("RFC") was otherwise unchanged between the treatment period and the post-treatment period.  At step seven, the ALJ concluded Patoski was unable to perform her past relevant work.  At step eight, the ALJ determined that, considering Patoski's background and the post-treatment RFC finding, Patoski was able to perform a significant number of jobs in the national economy that existed during the post-treatment period and after her DLI.

Furthermore, the ALJ determined that Patoski remained insured through December 31, 2002, which is her DLI. Patoski was therefore required to establish disability on or before the DLI in order to be entitled to a period of disability and disability insurance benefits. See 42 U.S.C. §§ 423 (a)(A) & (c)(1).

**D.    The Appeals Council's Decision**

Patoski timely appealed the ALJ's decision and review was granted by the Social Security Administration Appeals Council ("the Appeals Council"). In March, 2017, the Appeals Council adopted the ALJ's decision regarding all issues in this case and modified the decision to clarify that Patoski was not entitled to a period of disability or benefits from May 1, 2001, to May 1, 2002, because she applied too long after her disability ceased. See 20 C.F.R. §§ 404.621(d) and 404.320(b)(3).

Patoski filed her complaint in this action on May 5, 2017, alleging that the ALJ failed to consider pertinent evidence and did not properly conduct the analysis under 20 C.F.R. §§ 404.1520(a), 404.1527(d), 404.1529(c) and 404.1594. Patoski also alleged that the Appeals Council did not 1) consider her arguments or 2) provide notice that it was limiting the issues for review to those mentioned in its notice of proposed action sent to Patoski on November 7, 2016.

**II. Pending Motions**

**A. Legal Standard**

The Act gives United States District Courts ("District Courts") the power to affirm, modify or reverse an ALJ's decision or to remand the case for a rehearing. 42 U.S.C. § 405(g). A District Court's review of an ALJ decision is not, however, de novo. See Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981). The Act provides that the findings of the Commissioner are conclusive if they are "supported by substantial evidence" and the Commissioner has applied the correct legal standard. See 42 U.S.C. § 405(g); Seavey v. Barhart, 276 F.3d 1, 9 (1st Cir. 2001). If those criteria are satisfied, the Court must uphold the Commissioner's decision even if the record could justify a different conclusion. Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 144 (1st Cir. 1987). Substantial evidence means evidence "reasonably sufficient" to support the ALJ's conclusion. Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181, 184 (1st Cir. 1998).

**B. Application**

Patoski claims that the ALJ erred in finding her capable of light work and not disabled during and after the post-treatment period by 1) failing to rely on substantial medical evidence in

the record to support the mental RFC finding, 2) failing to rely on expert evidence to support the physical RFC finding and 3) affording undue weight to the opinions of certain doctors in supporting both the physical and mental RFC finding.  Patoski further contends that the Appeals Council erred in its decision because it failed to consider her arguments or provide notice of the issues it would consider on appeal.

**1. Medical Evidence in the Record**

Patoski contends the ALJ's conclusion is not based on substantial medical evidence in the record but rather on a layman's view of the importance of isolated events.  The Commissioner denies those allegations and responds that the ALJ's conclusions were supported by substantial evidence in the record, including Dr. Joan Kellerman's opinion, Patoski's testimony and her Global Assessment of Functioning ("GAF") scores.  Moreover, the Commissioner submits that even if the ALJ erred, Patoski cannot establish reversible error because she cannot establish that any error caused her prejudice.

To determine whether an individual is disabled, the ALJ must support his/her decision with substantial evidence in the record. See 42 U.S.C. § 405(g).  The United States Supreme Court has held that substantial evidence in this context is

> such relevant evidence as a reasonable mind might accept as adequate to support a conclusion [and must constitute] more than a mere scintilla.

Richardson v. Perales, 402 U.S. 389, 401 (1971).

Dr. Kellerman, a state agency psychologist, reviewed evidence in the record and found Patoski did not have any mental limitations beyond those described in the post-treatment RFC finding. Because Dr. Kellerman is a state agency psychologist, it was appropriate for the ALJ to adopt Dr. Kellerman's opinion. See 20 C.F.R. § 404.1527(c)(6).

Moreover, Patoski testified that she was capable of performing many daily activities during and after the post-treatment period, including driving, shopping, handling finances and attending dinner with family and friends. Adjudicators are entitled to rely on evidence of daily activities to determine an individual's degree of impairment. See 20 C.F.R. § 404.1529(c)(3)(i).

Finally, Patoski's GAF score was 60 during and after the post-treatment period, which the ALJ determined indicates only a moderate impairment in overall functioning. Although GAF scores are not determinative, it is appropriate for the ALJ to consider an individual's GAF score when assessing functional ability. See Dietz v. Astrue, No. 08-30123, 2009 WL 1532348, at *6 n.4 (D. Mass. May 29, 2009) (holding that although GAF scores are not determinative, they may help the ALJ assess an individual's functional ability). The ALJ considered Patoski's GAF score and found it consistent with the evidence in the record as a whole

showing Patoski was not disabled during and after the post-treatment period.

Accordingly, the ALJ's decision was appropriately based on substantial evidence in the record because Dr. Kellerman's opinion, Patoski's description of her daily activities and her GAF score collectively constitute more than a scintilla of evidence. See Richardson, 402 U.S. at 401 (holding that substantial evidence is more than a mere scintilla).

### 2. The Weight of Expert Opinions in the Record

Patoski also avers that the ALJ erred in weighing the medical opinions in the record because she gave little weight to opinion evidence from 1) Dr. Maria Lynn Buttolph, a Massachusetts General Hospital ("MGH") psychiatrist who treated Patoski during and after the post-treatment period, 2) Dr. Linda Shafer, an MGH psychiatrist who treated Patoski after the post-treatment period, 3) Dr. Anne Chosak, an MGH psychologist who treated Patoski during the post-treatment period, 4) Dr. Feng Ge, Patoski's primary care physician since July, 2008, and 5) Dr. Karen Krag, Patoski's primary oncologist from 2001 to 2014. The Commissioner denies those characterizations and maintains that the ALJ appropriately weighed all the evidence in the record. Moreover, the Commissioner submits that even if the ALJ erred, Patoski cannot establish reversible error because she cannot establish that any error caused her prejudice.

To determine whether an individual is disabled, the ALJ must weigh several potentially conflicting medical opinions. Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981). In assessing opinions, the ALJ may consider whether they are consistent with the "record as a whole". 20 C.F.R. § 416.927(c)(4). Where the opinion of a treating source is not treated as controlling, the ALJ determines how much weight to afford it. See Genereux v. Berryhill, No. 15-13227, 2017 WL 1202645, at *2 (D. Mass. Mar. 31, 2017). This inquiry involves multiple factors including: the length and nature of the treatment relationship, whether the source provided evidence in support of the opinion, whether the opinion is consistent with the record as a whole and whether the source is a specialist. 20 C.F.R. § 416.927(c). The ALJ must give "good reasons" for the weight assigned to each opinion. Id.

### a. Expert Opinions Consistent with the Record as a Whole

Patoski claims the opinions of Dr. Buttolph, Dr. Shafer, Dr. Chosak, Dr. Ge and Dr. Krag are consistent with the record as a whole and should be given more weight because Dr. Kellerman's contradictory opinion did not consider all the evidence in the record and Patoski's activities of daily living should not outweigh medical evidence in the record. Patoski also contends that the ALJ's partial dismissal of the opinion of

Dr. Krag was based on a layman's view of isolated events rather than on substantial medical evidence in the record.  The Commissioner denies those allegations and maintains that the ALJ gave appropriate weight to Dr. Kellerman's opinion and to Patoski's daily activities and appropriately discounted the opinions of Dr. Buttolph, Dr. Shafer, Dr. Chosak, Dr. Ge and Dr. Krag because they are inconsistent with substantial evidence in the record.

The ALJ may discount an opinion if it is inconsistent with the opinion of the record as a whole.  See Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018)(holding that a treating physician's opinion is not controlling if it is inconsistent with other substantial evidence in the record).  Moreover, to be eligible for benefits, a claimant must demonstrate that her impairments reached a disabling level of severity by the DLI. See Tsouvalas v. Berryhill, 265 F. Supp. 3d 124, 129 (D. Mass. 2017).  The ALJ may consider medical evidence after the DLI

> for what light (if any) it sheds on the question whether claimant's impairment(s) reached disabling severity before claimant's insured status expired.

Rivera v. Sec'y of Health & Human Servs., 19 F.3d 1427 (1st Cir. 1994) (unpublished table opinion) (modifications in original). If medical evidence after the DLI differs, it is the ALJ's duty to draw inferences from the record and resolve conflicts of

evidence. See Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991).

It was appropriate for the ALJ to discount the opinions of Dr. Buttolph, Dr. Shafer and Dr. Chosak because they were not fully consistent with the substantial evidence in the case record, including Dr. Kellerman's opinion, Patoski's description of her daily activities and GAF scores and evidence showing Patoski improved with medication. See 20 C.F.R. § 416.927(c)(4); see also Coren v. Colvin, 253 F. Supp. 3d 356, 359 (D. Mass. 2017) (holding that daily activities, when consistent with other factors in the record, can be used to support an ALJ's determination that other medical evidence is inconsistent with the record as a whole). Moreover, it was appropriate for the ALJ to determine that Dr. Kellerman's opinion was consistent with the record but Dr. Buttolph's opinion was not because it is the province of the ALJ to resolve conflicts of evidence. See Ortiz, 955 F.2d at 769.

Likewise, it was appropriate for the ALJ to discount the portion of Dr. Krag's opinion referencing Patoski's fatigue during and after the post-treatment period because the record does not document significant fatigue during the post-treatment period. Patoski proffers three documents referring to her fatigue during the post-treatment period: 1) Dr. Krag's opinion, 2) Dr. Buttolph's opinion and 3) Patoski's own handwritten note

complaining of fatigue. None of those documents reference <u>severe</u> fatigue during or after the post-treatment period and the ALJ concluded that Patoski did not suffer from severe fatigue during that period. Accordingly, the conclusion of the ALJ was appropriately based on the fact that no medical evidence in the record documented Patoski having severe fatigue during or after the post-treatment period. See 20 C.F.R. § 416.927(c)(4).

Moreover, it was appropriate for the ALJ to withhold deference to the portion of the opinions of Drs. Krag, Buttolph, Shafer and Ge maintaining that Patoski was unable to work full-time during the post-treatment period because inability to work is not a medical opinion. <u>Morales-Alejandra</u> v. <u>Med. Card Sys., Inc.</u>, 486 F.3d 693, 700 n.7 (1st Cir. 2007). The opinion of a treating source on the question of severity of impairment will be given controlling weight if it is well-supported by medical evidence and not inconsistent with other substantial evidence in the record. <u>Ormon</u> v. <u>Astrue</u>, 497 Fed. Appx. 81, 87 (1st Cir. 2012). The ALJ is, however, responsible for drawing inferences from the record, <u>Ortiz</u> 955 F.2d at 769, and making the ultimate determination of whether or not an individual is disabled and unable to work, 20 C.F.R. § 416.927(d).

This Court concludes that there is substantial evidence in the record to support the decision of the ALJ. She appropriately discounted the opinions of Drs. Buttolph, Shafer,

Chosak, Ge and Krag because those opinions were inconsistent with substantial evidence in the record.

### b. Medical Opinions Based on a Limited Treatment Relationship

In addition, Patoski claims that the opinions of her four doctors should not be discounted because they maintained significant treatment relationships with Patoski either prior to or after the post-treatment period. The Commissioner maintains that because those doctors had a limited treatment relationship with Patoski during the post-treatment period, their opinions regarding the post-treatment period should be discounted. The Commissioner also minimizes the relevancy of those treatment relationships <u>after</u> the post-treatment period in assessing Patoski's disability <u>during</u> the post-treatment period.

The ALJ is allowed to consider the length of treatment relationship when determining how much weight to afford to a physician's opinion. <u>See</u> <u>Nelson</u> v. <u>Colvin</u>, No. 14-10254 2015 WL 1387864, at *7 (D. Mass. Mar. 25, 2015) (holding that a medical opinion should be assessed giving consideration to the length of the treatment relationship and the frequency of examination). The ALJ is also allowed to consider the underlying evidence supporting a medical opinion when determining how much weight to grant to that medical opinion. <u>See</u> 20 C.F.R. § 404.1527(c)(3).

The ALJ found that Drs. Buttolph, Shafer and Ge each had a limited treatment relationship with Patoski before and during the post-treatment period. Dr. Buttolph, for example, had one encounter with Patoski before the post-treatment period and two encounters with Patoski during the post-treatment period. The ALJ can discount a medical opinion based on frequency of examination and length and nature of the treatment relationship. See 20 C.F.R. §§ 416.927(c)(2)(i) and (ii). Accordingly, it was appropriate for the ALJ to grant minimal weight to the opinions of Drs. Buttolph, Shafer and Ge regarding the post-treatment period.

Moreover, it was suitable for the ALJ to discount the opinions of Drs. Buttolph, Shafer and Ge regarding the time after the post-treatment period. The ALJ may assess medical evidence after the DLI to determine if the claimant was disabled prior to the DLI, Rivera 19 F.3d at 1427, but it is also her responsibility to draw inferences from the record, Ortiz 955 F.2d at 769. Accordingly, it was fitting for the ALJ to find that the opinions of Drs. Buttolph and Ge rendered after the post-treatment period did not demonstrate that Patoski was disabled during the post-treatment period. Because the opinion of Dr. Shafer was largely based on the opinion of Dr. Buttolph, it was properly discounted as well.

The ALJ found that Dr. Chosak did not have treatment notes supporting her opinion of Patoski and that Dr. Buttolph provided only summaries of her visits with Patoski. The ALJ can discount a medical opinion when it is not corroborated by adequate supporting explanations or laboratory findings. See 20 C.F.R. § 404.1527(c)(3); see also Dupras v. Colvin, No. 14-13967 2016 WL 845259, at *7 (D. Mass. Mar. 4, 2016) ("The ALJ was justified in discounting the summary assessment, especially in light of the lack of support in the actual treatment notes and inconsistency with the rest of the record."). Accordingly, it was within the ALJ's discretion to discount the opinion of Dr. Chosak regarding the post-treatment period.

The ALJ's conclusions must be accepted so long as there is "substantial evidence" in the record to support them. Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 2 (1st Cir. 1987). Accordingly, the decision will be affirmed.

### 2. Decision of Appeals Council

Patoski asserts that the Appeals Council failed to consider her arguments and did not provide adequate notice that it was limiting its consideration to the issues included in the notice of proposed action. The Commissioner denies those allegations and maintains that the Appeals Council considered the evidence in the record and provided adequate notice to Patoski regarding the issues it would review on appeal.

The Appeals Council held that the decision of the ALJ was supported by substantial evidence in the record and adopted her decision in full. The Appeals Council went on to clarify that Patoski was not entitled to disability or benefits from May 1, 2001, to May 2, 2002, because her claim was untimely. Because the Appeals Council reviewed the evidence in the record, it was entitled to adopt in full or modify the decision and findings of the ALJ's decision. See 20 C.F.R. § 404.979.

Patoski's contention that the notice was inadequate is unavailing. The Appeals Council provided notice that it would limit the issues it considers to evidence in the record and the timeliness of Patoski's claim. The Appeals Council sent its notice of proposed action to Patoski on November 7, 2016 ("the notice"). The Appeals Council proposed to issue a decision adopting the decision of the ALJ in full and finding Patoski time-barred from receiving disability insurance benefits pursuant to 20 C.F.R. §§ 404.621(a) and 404.320(b)(3).

The Appeals Council notified Patoski that it would consider any comments or new and material evidence submitted within 30 days from the date of the notice. In its decision, the Appeals Council noted it had received no comments or additional evidence from Patoski. Because the Appeals Council limited its decision to issues it mentioned in the notice, the Appeals Council provided adequate notice to Patoski regarding what issues it

-17-

would consider. See 20 C.F.R. § 404.976(a); see also Kennedy v. Bowen, 814 F.2d 1523, 1524-25 (11th Cir. 1987) (holding that once a claimant is given notice, she may not object to the Appeals Council's authority to review any aspect of the ALJ's decision). Accordingly, the decision of the Appeals Council as to Patoski's disability will be affirmed.

**ORDER**

In accordance with the foregoing, plaintiff's motion for judgment on the pleadings for a reversal or remand of the Commissioner's decision (Docket No. 11) is **DENIED** and defendant's motion for an order affirming the decision of the Commissioner (Docket No. 21) is **ALLOWED**.

**So ordered.**

/s/ Nathaniel M. Gorton\
Nathaniel M. Gorton\
United States District Judge

Dated July 30, 2018